IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                      PLAINTIFF/RESPONDENT

VS.                 Case No. 5:19-CR-50015-TLB-MEF-2

MICHAEL WALTER SELBY                          DEFENDANT/MOVANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is Defendant/Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed on January 1, 2022.[1] (ECF No. 78). The United States filed its response on February 23, 2022. (ECF No. 84). Defendant/Movant did not file a reply. The matter is ready for report and recommendation.

## I.     BACKGROUND

On September 12, 2018, Defendant/Movant, Michael Walter Selby ("Selby"), was named in a two-count Indictment charging him with possession with intent to distribute more than 50 grams of a mixture containing a detectable amount of methamphetamine and with being a felon in possession of a firearm.[2] (Case No. 5:18-cr-50070-TLB-1, ECF No. 1).

Selby appeared with his appointed counsel on December 11, 2018, for a change of plea

---

[1] The motion was received and docketed on January 7, 2022, but Selby declared under penalty of perjury that he placed the motion in the prison mailing system on January 1, 2022, so by virtue of the "prison mailbox rule" it is considered filed on that date. Rule 3(d) of the Rules Governing Section 2255 Proceedings.

[2] Selby was first charged on September 12, 2018, in Case No. 5:18-cr-50070-TLB-1, in which he pleaded guilty to possession with intent to distribute methamphetamine. Prior to sentencing in the 2018 case, Selby was indicted for conspiracy to distribute methamphetamine in 2019, in Case No. 5:19-cr-50015-TLB-MEF-2. As the Government clarifies, the firearm enhancement Selby complains of in his § 2255 Motion pertains to his 2018 case, although the two cases were consolidated for sentencing. Unless otherwise shown, ECF document references are to the 2019 case.

hearing. (Case No. 5:18-cr-50070-TLB-1, ECF No. 29). Pursuant to a written Plea Agreement, Selby agreed to plead guilty to possession with intent to distribute more than 50 grams of a mixture containing a detectable amount of methamphetamine, and if the Court accepted the Plea Agreement and once the Court pronounced sentence, the Government agreed to dismiss the felon in possession of a firearm charge. (Case No. 5:18-cr-50070-TLB-1, ECF No. 30, ¶ 1). The Court determined that Selby's guilty plea was voluntary, was supported by a factual basis, and Selby's guilty plea was accepted. The Court deferred final approval of the Plea Agreement pending the completion of a presentence report ("PSR"). (Case No. 5:18-cr-50070-TLB-1, ECF No. 29).

An initial PSR was prepared on March 8, 2019, and any objections to the PSR were due by March 22, 2019. (Case No. 5:18-cr-50070-TLB-1, ECF No. 32). On March 15, 2019, the Government advised that it had no objections to the PSR, but it notified the Probation Officer and the Court: that on March 8, 2019, the Government became aware of an investigation involving Selby and others regarding distribution of methamphetamine at the Washington County Jail; and that on March 14, 2019, Selby and others were indicted by the Grand Jury for conspiracy to distribute methamphetamine. (Case No. 5:18-cr-50070-TLB-1, ECF No. 38).

Selby was indicted on March 14, 2019, and he was charged with conspiracy to distribute methamphetamine. (ECF No. 1). This second Indictment, and Selby's co-defendant named in that Indictment, created a conflict of interest for Selby's appointed counsel, AFPD Jack Schisler, who moved to withdraw in the 2018 case on March 19, 2019. (Case No. 5:18-cr-50070-TLB-1, ECF No. 40). Attorney Charles W. Pearce was appointed to represent Selby in both the 2019 and 2018 cases. (ECF No. 18; Case No. 5:18-cr-50070-TLB-1, ECF No. 42).

2

On August 16, 2019, and pursuant to a written Plea Agreement, Selby pleaded guilty to conspiracy to distribute methamphetamine in the 2019 case. (ECF Nos. 38, 39). The Court determined that Selby's guilty plea was voluntary, that there was a factual basis for the plea, and Selby's guilty plea was accepted. The Court deferred final approval of the Plea Agreement pending the completion of a presentence report ("PSR"). (ECF No. 38).

An initial PSR was prepared in the 2019 case on October 1, 2019, with any objections to the PSR being due by October 15, 2019. (ECF No. 47). The United States had no objections to the PSR. (ECF No. 52). Selby had three objections to the PSR: first, he objected to the two-level enhancement for possession of a firearm, arguing that based on the location of the firearm he could not access or use the firearm, and that a bullet for the firearm was found on a co-defendant; second, he objected to the inclusion of any allegations and/or evidence from the 2019 case in the PSR for the 2018 case; and third, he objected to the two cases being sentenced together based on the resulting range when the cases are combined, contending that when sentenced together the level enhancements result in a range that is greater than if the cases were sentenced separately. (ECF No. 56). A final PSR was prepared on November 24, 2019 (ECF No. 57), and a revised final PSR was submitted on December 5, 2019 (ECF No. 61).

The two cases were consolidated for sentencing. (ECF No. 70, p. 2). A sentencing hearing was held on December 13, 2019. (ECF Nos. 63, 70). Selby informed the Court that he was fully satisfied with attorney Pearce's legal services and representation. (ECF No. 70, p. 3). He confirmed that counsel had reviewed all the PSRs and Addendums with him. *Id*. at 7.

Attorney Pearce reiterated Selby's objections to the PSRs. (ECF No. 70, pp. 9-11).

3

Regarding the two-level firearm enhancement, the Court recognized that the Government bears the burden of proof but noted that the operative facts were not in dispute, and that the issue to be determined was whether the enhancement had been properly applied given the undisputed facts. *Id*. at 12.  After hearing arguments from counsel and noting that Eighth Circuit caselaw sets "a very low bar" for determining applicability of the enhancement, the Court found that as to spatial and temporal proximity "there's one vehicle" and "in the vehicle are found both drugs and a gun," so in terms of both temporal and spatial proximity, "it really does not get any closer than that." *Id*. at 19.  The Court also observed that the facts in the PSR were uncontested, and two facts stood out: first, law enforcement acted on information from a confidential source, and those facts, exactly as predicted by the confidential source, turn out to be true; and second, a search of Selby's cell phone revealed that he was seeking to exchange the gun for drugs.  *Id*. at 20.  Those facts, along with the spatial and temporal proximity, was enough for the Court to conclude that the application of the gun enhancement was proper, and that it was not clearly improbable that there was a connection between the gun and the drug trafficking activity.  Selby's objection to the two-level enhancement was overruled.  *Id*. at 20-21.

Selby's objection that the two cases be grouped together to calculate a single advisory guidelines range was sustained, the Court finding no good reason to do so given the procedural history of the two cases. (ECF No. 70, p. 33).  This resulted in a separate calculation of the advisory guidelines range for each offense of conviction.  *Id*.

For the 2018 offense of conviction, the Court found that Selby was accountable for 73.94 grams of methamphetamine, which corresponded to a base offense level of 30.  (ECF No. 70, pp.

4

37-38). The firearm enhancement applied to the 2018 offense, so a two-level enhancement raised the offense level to 32. *Id*. at 38. Finding that Selby's 2019 offense, committed after his guilty plea but before sentencing in the 2018 case, was conduct "not consistent with someone who has accepted responsibility," the Court denied any reduction for acceptance of responsibility in the 2018 case. *Id*. at 39. Selby had a total of 14 criminal history points, placing him in criminal history category VI. *Id*. at 42-43. With a total offense level of 32 and being in criminal history category VI, the guidelines calculation for the 2018 offense called for a range of between 210 to 262 months imprisonment. *Id*. at 43.

For the 2019 offense of conviction, the Court found that Selby was accountable for 1.1 grams of a substance containing methamphetamine, which corresponded to a base offense level of 12. (ECF No. 70, pp. 39-40). A two-level enhancement applied to this offense because the distribution was being made within a prison or detention facility, resulting in an adjusted offense level of 14. *Id*. at 40. The Court also noted that after Selby had pleaded guilty to the 2019 offense, he continued to engage in similar criminal activity – seeking to smuggle methamphetamine into the jail through envelopes falsely marked as "legal mail" – and that such activity had been discovered within two weeks of the sentencing hearing. *Id*. at 41-42. The Court considered such conduct "as being entirely inconsistent with acceptance of responsibility," so no reduction for acceptance of responsibility was awarded. *Id*. at 42. With a total offense level of 14 and being in criminal history category VI, the guidelines calculation for the 2019 offense called for a range of between 37 to 46 months imprisonment. *Id*. at 44.

After hearing arguments from counsel, and a statement from Selby in which he attributed

his criminal troubles to his addiction to drugs, the Court sentenced Selby to 210 months imprisonment for the 2018 offense (the low end of the advisory guidelines range), and to a concurrent term of 37 months imprisonment for the 2019 offense (also at the low end of the advisory guidelines range). (ECF No. 70, pp. 68-69, 74). On motion of the Government, Count Two of the 2018 Indictment was dismissed. *Id*. at 74. Judgment was entered on December 20, 2019. (ECF No. 65).

On direct appeal, Selby challenged the firearm enhancement and the substantive reasonableness of his sentence. (ECF No. 77-1, p. 3). Selby argued that the Court erred in finding that he possessed the firearm in connection with the drug distribution offense and in imposing the § 2D1.1(b)(1) enhancement. *Id*. The Eighth Circuit found it undisputed that a confidential informant's tip, much of which was corroborated by law enforcement surveillance, included that Selby would be in possession of a firearm. *Id*. at 4. Further, it was noted that as a factual basis for his guilty plea, Selby admitted that text messages recovered from his cell phone showed him attempting to trade the firearm for more drugs. *Id*. Addressing Selby's argument that the evidence was insufficient to establish that it was not clearly improbable that the firearm was connected to his methamphetamine distribution offense, the Eighth Circuit agreed with Judge Brooks' finding that, "in terms of temporal and spatial proximity," a gun recovered in the trunk of a car near 75 grams of methamphetamine "really does not get any closer." *Id*. at 5. And given Selby's text messages showing his attempts to trade the gun for more drugs, the Eighth Circuit found it clear that the Government established the required connection "between the weapon, the drug trafficking activity, and [Selby]." *Id*. The Court of Appeals also concluded that Selby's sentence, at the

bottom of the advisory guidelines range, was substantively reasonable. *Id.* at 6.

On January 1, 2022, Selby filed his § 2255 motion now before the Court. (ECF No. 78). The motion asserts four grounds for relief: (1) breach of the plea agreement, which provided for dismissal of the firearm charge, when his sentence was enhanced due to the presence of the firearm; (2) that his guilty plea was not voluntarily, knowingly, and intelligently made since he "was led to believe the firearm count would no longer be subject to punishment"; (3) ineffective assistance of counsel for failing to object to the sentence enhancement based on the dismissed firearm count, and failure to raise the issue on direct appeal; and (4), a Rule 11 violation because he "was told certain things would not be counted and they were." *Id*. These claims all relate to the two-level enhancement for possession of a dangerous weapon in connection with his drug trafficking conviction pursuant to U.S.S.G. § 2D1.1(b)(1). The United States responded to the motion on February 23, 2022. (ECF No. 84). Selby did not file a reply.

## II.   DISCUSSION

"A prisoner in custody under sentence ... claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment

7

vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).  A thorough review of Selby's § 2255 motion and the files and records of this case conclusively shows that Selby is not entitled to relief, and the denial and dismissal of his § 2255 motion with prejudice is recommended.

### A.  No Breach of the Plea Agreement

For his first ground for § 2255 relief, Selby claims the Government breached the Plea Agreement, which provided for dismissal of the felon in possession of a firearm charge against Selby, when his sentence was still enhanced due to the presence of the firearm. (ECF No. 78, pp. 4-5).  The claim has no merit.

In Selby's 2018 case, the parties entered into a written Plea Agreement that provided Selby would plead guilty to Count One of the Indictment, charging him with possession with intent to distribute more than 50 grams of a mixture containing a detectable amount of methamphetamine, and the Government agreed to dismiss Count Two, charging Selby with being a felon in possession of a firearm.  (Case No. 5:18-cr-50070-TLB-1, ECF No. 30, ¶ 1).  The Plea Agreement informed Selby, however, that relevant conduct would be considered in determining his sentence.  *Id*., ¶ 17. He was advised that such relevant conduct included "the conduct that is the subject of this investigation for which he has not been charged up to the date of this Agreement, and/or *which is the basis for any of the counts which will be dismissed pursuant to this agreement*." *Id*. (emphasis added).  The Plea Agreement also informed Selby that the advisory United States Sentencing Guidelines would be considered by the Court in determining the sentence, and that the Plea

8

Agreement does not promise any specific sentence. *Id.*, ¶¶ 15, 16. Upon imposition of sentence, and as promised in the Plea Agreement, the Government moved to dismiss Count Two of the Indictment, and the Court granted the motion. (ECF No. 70, p. 74).

Selby fails to present any facts to support his claim that the Government breached the parties' Plea Agreement by permitting the Court to enhance Selby's sentence based on relevant conduct related to a charge dismissed at sentencing. Selby expressly agreed that relevant conduct – including conduct which is the basis *for any of the counts which will be dismissed pursuant to this agreement* – could be considered by the Court at sentencing, and the Court's consideration of relevant conduct was proper under U.S.S.G. § 1B1.3.

Accordingly, Selby's first ground for relief based on the Government's alleged breach of the parties' Plea Agreement must be denied.

### B.  Selby's Guilty Plea was Voluntary and Intelligent

Selby next asserts that his guilty plea was not voluntarily, knowingly, and intelligently made since he "was led to believe the firearm count would no longer be subject to punishment." (ECF No. 78, pp. 5-6). The record shows otherwise.

When a guilty plea is entered, the focus of a subsequent collateral attack must remain limited to the nature of counsel's advice and the voluntariness of the guilty plea. *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984) (citing *Tollett v. Henderson*, 411 U.S. 258, 266 (1973)). As the Court in *Tollett* observed:

> ". . . a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the

offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*[3].

A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge . . . And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, (internal citation omitted) it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings." *Id*. at 267.

The rationale and ruling of *Tollett*, while a decision concerning a state prisoner's habeas claims, has been adopted by the Eighth Circuit for application to motions made by federal prisoners under 28 U.S.C. § 2255. *See Bass*, 739 F.2d at 406.

The standard for determining the validity of a guilty plea remains whether it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *Machibroda v. United States*, 368 U.S. 487, 493 (1962); and *Kercheval v. United States*, 274 U.S. 220, 223 (1927)). "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral

---

[3] *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases.").

proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)). A defendant has a heavy burden to overcome those admissions and show that his guilty plea was involuntary. *Blackledge v. Allison*, 431 U.S. 63, 72-74 (1977). When a defendant complains that ineffective assistance of counsel led him to accept a plea offer rather than proceeding to trial, a defendant must show that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

As discussed above, the parties entered into a written Plea Agreement that provided Selby would plead guilty to Count One of the Indictment in the 2018 case, charging him with possession with intent to distribute more than 50 grams of a mixture containing a detectable amount of methamphetamine, and the Government agreed to dismiss Count Two, charging Selby with being a felon in possession of a firearm. (Case No. 5:18-cr-50070-TLB-1, ECF No. 30, ¶ 1). The Plea Agreement specifically informed Selby that relevant conduct would be considered in determining his sentence. *Id*., ¶ 17. He was advised that "relevant conduct" included "the conduct that is the subject of this investigation for which he has not been charged up to the date of this Agreement, and/or *which is the basis for any of the counts which will be dismissed pursuant to this agreement*." *Id*. (emphasis added). The Plea Agreement also informed Selby that the advisory United States Sentencing Guidelines would be considered by the Court in determining the sentence, and that the Plea Agreement does not promise any specific sentence. *Id*., ¶¶ 15, 16.

By signing the written Plea Agreement, Selby represented that he had read the agreement and carefully reviewed every part of it with his counsel; that he fully understood the agreement,

11

and that no promises, agreements, understandings, or conditions had been made or entered into in connection with his decision to plead guilty except those set forth in the agreement; that he was satisfied with the legal services provided by defense counsel in connection with the plea agreement and matters relating to it; and that he entered into the Plea Agreement "freely, voluntarily, and without reservation." (Case No. 5:18-cr-50070-TLB-1, ECF No. 30, ¶ 27). He further acknowledged that the written Plea Agreement constituted the entire agreement by the parties, and that no oral agreements or promises had been made to induce him to plead guilty in the case. *Id*., ¶ 29.

At his change of plea hearing in the 2018 case, Selby praised the work of his court-appointed counsel, Mr. Jack Schisler, stating "[h]e's really above and beyond expectations for … an appointed attorney," and "[h]e's done an outstanding job really, keeping in contact with me, maintaining me, being fully aware of everything that I need to do …" (ECF No. 83, pp. 7-8). The Court informed Selby of the potential consequences of a plea of guilty, including a mandatory minimum sentence of five years imprisonment and a maximum term of imprisonment up to 40 years, and Selby stated his understanding of the consequences. *Id*. at 12. Selby further acknowledged that nobody had forced him in any way to plead guilty, that nobody had threatened him if he did not plead guilty, and that it was his desire to plead guilty "voluntarily and completely of [his] own free will because [he] was guilty." *Id*. at 13-14. He told the Court that he read the written Plea Agreement in its entirety before he signed it, and that he consulted with Mr. Schisler who explained the terms and effect of the agreement with him before he signed it. *Id*. at 14-15. The Court made clear that despite any term or provision of the agreement, the Court retained the

12

discretion and authority to impose any proper sentence within the applicable statutory minimum and statutory maximum, and Selby stated his understanding of the Court's authority. *Id*. at 16.

Of particular significance to the claim Selby now raises, the Court carefully and thoroughly explained to Selby the concept of relevant conduct. (Case No. 5:18-cr-50070-TLB-1, ECF No. 83, pp. 20-21). The Court specifically told him:

> "It is information that surrounds the offense of conviction, *but it can involve, in your particular case, for example, the Court taking into account the factual circumstances that led to you being charged with being a felon in possession even though you will not be pleading guilty to being a felon in possession, nor will you be convicted of being a felon in possession*.
>
> Nevertheless, under this concept of relevant conduct, the Court can still take those underlying facts and circumstances into consideration." *Id*. (emphasis added).

Selby stated that he understood. *Id*. at 21.

A factual basis in support of the guilty plea was presented, including the facts that inside the vehicle Selby was traveling in detectives located three baggies that contained distribution quantities of methamphetamine along with a .32-caliber Smith & Wesson revolver, and that upon searching Selby's cell phone detectives located text messages where he was attempting to sell the .32-caliber Smith & Wesson revolver for drugs to sell. (Case No. 5:18-cr-50070-TLB-1, ECF No. 83, pp. 21-23). Selby admitted to those facts and agreed that the Government could prove those facts if the case were to proceed to trial. *Id*. at 24. Selby then entered his guilty plea to Count One of the Indictment. *Id*.

The record before the Court shows that Selby read the written Plea Agreement and discussed its ramifications with his counsel. He understood the Plea Agreement and its potential consequences. He admitted this to the Court at his change of plea hearing and praised his counsel. The Plea Agreement informed Selby of the maximum penalties, that the United States Sentencing Guidelines would be considered by the Court at sentencing, that no specific sentence was promised, and that relevant conduct could be considered by the Court at sentencing. Selby was explicitly told both in the written Plea Agreement and by the Court at the change of plea hearing that such relevant conduct *could include the facts and circumstances related to the felon in possession charge* brought against him even though that charge was to be dismissed at sentencing. Selby acknowledged his understanding of the Court's authority to consider such relevant conduct before he pleaded guilty to the drug distribution charge. Thus, Selby's assertion that he was "led to believe the firearm count would no longer be subject to punishment" is blatantly contradicted by the record, and he has offered nothing more that conclusory allegations that his guilty plea was not voluntary and knowing.

Selby's claim also fails because it "founders on abundant circuit precedent holding that inaccurate advice of counsel about the sentencing guidelines or likely punishment does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range." *United States v. Quiroga*, 554 F.3d 1150, 1155 (8th Cir. 2009). Selby was so informed, both in the written Plea Agreement and by the Court at his change of plea hearing.

Finally, to show prejudice pursuant to *Hill v. Lockhart*, *supra*, Selby must show a reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Selby makes no such allegation or showing. He does not claim to be innocent, either of the methamphetamine distribution charge to which he pleaded guilty or of possessing a firearm at the time of that offense, but only that he was induced to plead guilty to the methamphetamine distribution charge because of the promise that the felon in possession of a firearm charge against him would be dismissed. And it was. If Selby's claim is that counsel should have gotten him a more favorable plea agreement, i.e., one that did not include consideration of his relevant conduct, *Missouri v. Frye*, 132 S.Ct. 1399 (2012) would also require that he demonstrate a reasonable probability that the prosecutor would have made such an offer and that the trial court would have accepted it. Selby has not done so. Just as the Court in *Frye* observed, prosecutors and judges are familiar with the boundaries of acceptable plea bargains, and one that stipulates away a defendant's relevant conduct is plainly not within those boundaries. The United States Sentencing Guidelines, while advisory, do require consideration of a defendant's relevant conduct, U.S.S.G. § 1B1.3, and it is inconceivable that a plea bargain eliminating the consideration of a defendant's relevant conduct would ever be accepted by this Court. Therefore, Selby has failed to show any prejudice arising from his claim of ineffective assistance of counsel in the process of plea bargaining.

In sum, Selby has not shown that his guilty plea was involuntary and unintelligent; he has not shown deficient performance by his counsel in connection with the plea negotiation; nor has

he shown any prejudice resulting from any alleged ineffective assistance of counsel in connection with the plea negotiation. Selby's second ground for § 2255 habeas relief should be denied.

### C. Claims Litigated on Direct Appeal Are Not Cognizable Under § 2255

In his third ground for relief, Selby falsely claims that his counsel failed to object to the sentence enhancement based on the dismissed firearm count and that he failed to raise the issue on direct appeal. (ECF No. 78, pp. 7-8). The record plainly shows otherwise.

Selby's 2019 counsel, Mr. Charles Pearce, did object to the PSR's recommendation that Selby's base offense level for possession with intent to distribute methamphetamine be increased by two levels under U.S.S.G. § 2D1.1(b) for possession of a dangerous weapon in connection with the drug trafficking offense. (ECF No. 56). At sentencing, Selby stated that he was fully satisfied with attorney Pearce's legal services and representation, and he confirmed that counsel had reviewed all the PSRs and Addendums with him. (ECF No. 70, pp. 3, 7). Over Selby's objection, and further argument from attorney Pearce, the Court found that Selby possessed the firearm found in the vehicle's trunk in connection with the methamphetamine distribution offense and applied the two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1). (ECF No. 70, pp. 20-21).

Selby's counsel also argued the issue on direct appeal to the Eighth Circuit Court of Appeals. (ECF No. 77-1, p. 3). He argued that the Court erred in finding that he possessed the firearm in connection with the drug distribution offense and in imposing the § 2D1.1(b)(1) enhancement. *Id*. The Eighth Circuit disagreed, finding that the Government established the required connection "between the weapon, the drug trafficking activity, and [Selby]." *Id*. at 5.

Thus, Selby's assertions that his counsel failed to object to the sentence enhancement based

on the dismissed firearm count, and failed to raise the issue on direct appeal, are unequivocally contradicted by the record in this case.

"It is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2855." *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003) (quoting *United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981)). *See also United States v. Davis*, 406 F.3d 505, 511 (8th Cir. 2005) ("we find the present claim to be the same claim in different clothes, and we will not reconsider the issue on collateral review"); *Withrow v. Williams*, 507 U.S. 680, 721 (1993) (Scalia, J., concurring opinion) ("[s]ince *Kaufman*[4] federal courts have uniformly held that, absent countervailing considerations, district courts may refuse to reach the merits of a constitutional claim previously raised and rejected on direct appeal"); *Loc Huu Bui v. United States*, 2014 WL 582954, at p. 8 (E.D.N.C. 2014) ("a petitioner may not circumvent an adverse ruling on direct appeal by recasting it as an ineffective assistance of counsel claim"); and, *Dowdell v. United States*, 859 F.Supp.2d 176, 179 (D.Mass. 2012) ("[i]t is settled law that a petitioner may not revive claims already decided on direct appeal by cloaking them in 'ineffective assistance of counsel' garb in a § 2255 petition").

The Eighth Circuit affirmed the district court's finding that Selby possessed the firearm in connection with a drug trafficking offense and that the two-level enhancement under U.S.S.G. § 2D1.1(b)(1) was proper. Since Selby has already litigated the propriety of the firearm enhancement on direct appeal, and lost, he may not circumvent the Eighth Circuit's adverse ruling on direct appeal by recasting the issue as a claim of ineffective assistance of counsel in this § 2255

---

4 *Kaufman v. United States*, 394 U.S. 217 (1969).

proceeding.  Selby's third ground for § 2255 relief must be denied.

### D.  No Rule 11 Violation

For his fourth and final ground for § 2255 relief, Selby alleges a violation of Fed. R. Crim. P. 11 because he "was told certain things would not be counted and they were." (ECF No. 78, pp. 8-9).  This claim is essentially a restatement of his second ground for relief based on his allegation that his guilty plea was not voluntarily, knowingly, and intelligently made since he "was led to believe the firearm count would no longer be subject to punishment."  It is subject to dismissal for the same reasons discussed above.

Selby cites Fed. R. Crim. P. 11(b)(1)(G) in support of his claim.  That subsection of Rule 11 requires the Court to inform a defendant, and determine that the defendant understands, "the nature of each charge to which the defendant is pleading."  Selby was so advised by the Court during his change of plea hearing on December 11, 2018.  (ECF No. 83, pp. 10-12).  Selby acknowledged his understanding of the charge in Count One of the Indictment that he was pleading guilty to.  *Id*. at 11.  He confirmed that his counsel had reviewed and explained to him what the Government would have to prove at trial to obtain a conviction on that charge.  *Id*.  Further, as required by Fed. R. Crim. P. 11(b)(1)(H) and (I), the Court informed Selby of the consequences of a guilty plea on that charge, including both a mandatory minimum sentence of five years imprisonment and a statutory maximum sentence of up to 40 years imprisonment.  *Id*. at 12.  And the Court informed Selby, consistent with Fed. R. Crim. P. 11(b)(1)(M), that in determining a sentence the Court was obligated to calculate the applicable sentencing guideline range, and to consider that range, possible departures under the guidelines, and other sentencing factors under

18 U.S.C. § 3553(a).  *Id*. at 18-120.  Selby stated that he understood.  *Id*.  Judge Brooks also carefully explained to Selby the concept of relevant conduct in sentencing, making sure to explain that relevant conduct could, in Selby's case, include "taking into account the factual circumstances that led to you being charged with being a felon in possession even though you will not be pleading guilty to being a felon in possession, nor will you be convicted of being a felon in possession."  *Id*. at 20-21.  Again, Selby voiced his understanding.  *Id*. at 21.

The record simply does not support Selby's claim, and it is subject to summary dismissal.

### III.     No Evidentiary Hearing Is Warranted

A movant is not entitled to an evidentiary hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the [movant] is entitled to no relief." *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)).  Such are the circumstances here where the record conclusively shows that Selby is entitled to no relief.

### IV.     No Certificate of Appealability is Warranted

A Certificate of Appealability may issue under 28 U.S.C. § 2253 only if the applicant has made a substantial showing of the denial of a constitutional right.  A "substantial showing" is one demonstrating that reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented deserved further proceedings even though the petitioner did not prevail on the merits in the court considering his case.  *Slack v. McDaniel*, 529 U.S. 473 (2000).  Selby has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability should be denied.

## V.  CONCLUSION

For the reasons and upon the authorities discussed above, Selby's grounds for relief find no support in the record, and his § 2255 motion is subject to summary dismissal.

It is, therefore, recommended that Selby's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 78) be **DISMISSED with PREJUDICE**.  It is further recommended that a request for a Certificate of Appealability be denied.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 16th day of February 2023.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE